**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS G. KROCHTA**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| T.R. (Minor Child), | ) ) | |
| and, | ) ) | |
| C.C. (Father), | ) ) | |
| Appellant Respondent, | ) ) | |
| vs. | ) ) | No. 82A01-1311-JT-497 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge

**July 8, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

C.C. ("Father") appeals the termination of the parent-child relationship with his daughter, T.R. We affirm.

## Issue

Father raises one issue, which we restate as whether the Department of Child Services ("DCS") presented sufficient evidence that the termination of the parent-child relationship is in T.R.'s best interests.

## Facts[1]

T.R. was born in 2003. T.R. and her siblings lived with their mother, E.H. ("Mother"). In 2011, DCS became involved with the family when T.R. missed seven days of school. Upon investigation, DCS learned that Mother was using drugs and that the conditions of the home were insufficient. Soon after DCS became involved with the family, Father, who has an extensive criminal history, robbed a bank. In December 2012, Father was sentenced to serve 151 months in a federal prison.

---

[1] Because Father only challenges whether termination of the parent-child relationship is in T.R.'s best interests, we limit the facts to those relevant to that issue.

A petition alleging that T.R. was a child in need of services was filed, and in December 2012, DCS filed a petition to terminate Mother's and Father's parental rights. Mother voluntarily relinquished her parental rights. At the time of the hearing on the termination of Father's parental rights, T.R. was living with a cousin who intended to adopt her. At the termination hearing, Father indicated he had to "serve like nine years and something." Tr. p. 14. Father testified that he would be released from prison when T.R. was seventeen or eighteen.

On October 22, 2013, the trial court issued an order terminating the parent-child relationship. The trial court found in part:

> 31. In the stable, consistent environment provided by the current relative placement with the assistance of a psychiatrist, therapists, school counselors, teachers, mentors, and others, [T.R.'s] behaviors and grades have greatly improved. She attends school regularly, has greater self-esteem, and is improving in school. She now appears to be a happy, increasingly well adjusted child.
>
> * * * * *
>
> 33. [T.R.] has a bonded relationship with her half brother with whom she resides, who may also be available for adoption by the current relative, pre-adoptive placement.
>
> 34. Both the family case managers and the CASA volunteer testified that [T.R.] needs a permanent, safe home already available when she is adopted by her current relative placement.

App. p. 22. The trial court concluded in part, "Termination of the parent-child relationships between [T.R.] and his [sic] parents are in the child's best interests. She is

in a loving stable pre-adoptive home with her half brother." Id. at 24. Father now appeals.

## Analysis

"When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. Id. "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." Id. (quoting Indiana Trial Rule 52(A)). Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. Id. "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." Id. We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

A petition to terminate a parent-child relationship must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or

4

probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. I.A., 934 N.E.2d at 1133.

Father argues there is insufficient evidence to establish that termination of the parent-child relationship is in T.R.'s best interests. He claims the current placement should continue as a guardianship while he serves his prison sentence, which will be completed around the time T.R. turns eighteen. The evidence presented at the hearing, however, supports the trial court's findings and its conclusion that termination of the parent-child relationship is in T.R.'s best interests.

5

For example, the CASA testified that it was in T.R.'s best interests to be adopted by her cousin, "to stay with her brother, and to have a secure future." Tr. p. 33. The CASA testified that T.R.'s cousin will ensure that T.R. is educated, dressing properly, and behaving properly. The CASA explained that being adopted by her cousin will build up T.R.'s self-confidence and that, with her cousin, T.R. has "every opportunity to be academically successful, to be a good citizen[.]" Id. at 34. The CASA testified that T.R. remaining with her cousin without being adopted is not in T.R.'s best interests. The CASA stated that T.R. in particular needs to be part of a family "because she is separated from her Mother, her younger brother, and she has issues with that." Id. at 35.

This is consistent with the testimony of two family case managers. One family case manager stated that T.R. was doing well in her placement and needed permanency because Mother relinquished her parental rights and Father was incarcerated for an extended period of time. The other family case manager explained, "If she is adopted she knows who her family is and has a safe stable home environment and her needs will be met." Id. at 49. This evidence is sufficient to support the trial court's conclusion that termination of the parent-child relationship was in T.R.'s best interests.

### Conclusion

The DCS presented sufficient evidence that termination of the parent-child relationship is in T.R.'s best interest. We affirm.

Affirmed.

CRONE, J., concurs.

BAKER, J., concurs with separate opinion.

6

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) | |
| T.R. (Minor Child), | ) ) | |
| and, | ) ) | |
| C.C. (Father), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 82A01-1311-JT-497 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner, | ) ) | |

**BAKER, Judge, concurring.**

While I fully concur with the majority, I write separately to highlight what I believe is an important distinction between this case and a similar case that was authored by my esteemed colleague, who also penned the instant case. Indeed, I believe that it is this very distinction that can determine whether a parent's rights are terminated.

In <u>In re M.W.</u>, M.W. was determined to be a CHINS in September 2008. 943 N.E.2d 848, 850 (Ind. Ct. App. 2011). In October 2008, Father was sentenced to 365

7

days in jail. Id. In December 2008, the juvenile court, following a CHINS proceeding, ordered Father to participate in various services, including establishing custody in a court proceeding. Id.

Despite the approved permanency plan of reunification, the DCS filed a petition to terminate Mother and Father's parental rights in May 2009. Id. at 850-51. When Father was released from incarceration in August 2009, he asked the DCS if he could see M.W., but it denied his request. Id. at 851.

In January 2010, Father turned himself in on prior fraud and theft convictions and was sentenced to one year incarceration. Id. Father was scheduled to be released from prison on July 8, 2010. Id.

At the April 29, 2010 termination hearing, the evidence demonstrated that M.W. was appropriately bonded with Father. Id. at 852. Additionally, Father had completed anger management classes, and it had been determined that domestic violence counseling was unnecessary. Id. Furthermore, all of Father's drug screens were negative. Id. Father completed the various assessments and evaluations required of him and complied with all recommendations. Id. Father maintained employment when he was not incarcerated and actively sought employment when he was released from incarceration. Id. In short, Father completed all requirements of the amended case plan except that he failed to reimburse the DCS for costs, failed to attend every visitation with M.W., and failed to complete home-based counseling. Id.

Following the hearing, the juvenile court entered an order terminating both parents' rights. In the order, the juvenile court observed Father's minimal visitation and

8

employment because of his incarceration. Id. The juvenile court also noted the parents' lack of cooperation and the numerous opportunities that they had been given to reunite with their child. Id. Father appealed. Id. at 853.

The M.W. Panel noted that Father had been incarcerated for ten months of the twenty month period between M.W.'s removal and the termination hearing. Id. at 855. Father was due to be released shortly after the termination was ordered. Id. Father had complied with almost all of the requirements of the amended case plan. Id. And although the juvenile court cited Father's lack of employment and housing as a basis for termination, a panel of this court found that "he [had] been penalized for his required short-term incarceration." Id. Because Father was scheduled to be released soon, his ability to establish a stable life could be quickly assessed. Id. Consequently, the M.W. Panel reversed the termination order as to Father. Id. at 856.

In this case, T.R. is approximately eleven years old, and Father is not scheduled to be released from prison until she is eighteen years old. Slip op. at 5. Additionally, T.R. is currently being cared for by her cousin and other family members. Id. at 6. However, there is a vast difference, particularly to a child, between seven years and one and one-half years even if that child is cared for by family. Thus, it is apparent that the longer a parent will be incarcerated at the time of a termination hearing, the more likely that parent will have his parental rights terminated. See In re J.M., 908 N.E.2d 191, 194-95 (Ind. 2009) (upholding the trial court's decision to deny termination of parental rights when the parents had less than two years of incarceration). That said, many questions linger. For example, how many remaining years of incarceration are too many? What if

9

the parent is working towards an early release? How much should the need for permanency, as that term is now used in the termination analysis, override a child's right to have a relationship with his natural parent, particularly if that child is in family placement? While such questions are more suited for a majority opinion, I offer them as proverbial food for thought as we move forward.

We need to remain cognizant of the standard language that we place on almost all termination cases, namely: "A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests." In re M.W., 943 N.E.2d at 853. Because I believe that, in this case, the facts indicate that the DCS had sufficient evidence to terminate Father's parental rights, I fully concur.