ATTORNEY FOR APPELLANT
Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Robert J. Henke
Rachael Armstrong
Dana J. Phillips
Indiana Department of Child Services
Indianapolis, Indiana

FILED
Oct 05 2010, 10:13 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 62S01-1003-JV-148

IN THE MATTER OF THE INVOLUNTARY
TERMINATION OF PARENT-CHILD
RELATIONSHIP OF I.A.,

AND

J.H. (FATHER),

*Appellant (Respondent below),*

v.

INDIANA DEPARTMENT OF CHILD SERVICES,

*Appellee (Petitioner below).*

Appeal from the Perry Circuit Court, No. 62C01-0802-JT-00033
The Honorable M. Lucy Goffinet, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 62A01-0905-JV-252

**October 5, 2010**

**Rucker, Justice.**

**Case Summary**

The trial court terminated Father's parental rights on the grounds that (1) the reason for his child's placement outside of Father's home will not be remedied; and (2) the continuation of the parent-child relationship poses a threat to the well-being of the child. Concluding that the evidence does not clearly and convincingly demonstrate that Father's parental rights should be terminated, we reverse the judgment of the trial court.

**Facts and Procedural History**

On February 18, 2006, a son, I.A. (sometimes referred to as "Child") was born out of wedlock to D.A. ("Mother") and J.H. ("Father"). Child was one of Mother's seven children then ranging in age from birth to fourteen years old. Sometime within a few months following Child's birth, Mother told Father that I.A. was his son.

The Perry County Department of Child Services ("DCS") became involved with Mother and her children in February 2006 due to allegations of lack of supervision, educational and medical neglect, and Mother's drug use. On December 21, 2006, DCS received a report that unknown to Mother, two of her younger children were discovered by police playing in the parking lot of a motel unsupervised and two of her older children had travelled to a nearby town alone. The children were thus removed from Mother's care based on a lack of supervision and on January 4, 2007, DCS filed individual petitions alleging each child was a child in need of services ("CHINS"). With respect to I.A., noting "[a]ddress [u]nknown," DCS named Father as a party to the petition. Ex. Tr. (Exhibit B).[1] After a hearing held on March 30, 2007, at which both Mother and Father appeared pro se, the trial court entered an order granting the CHINS petition. The order included a case plan for reunification that provided in relevant part, "[t]he mother shall participate in the Perry County Department of Child Services' CHINS Drug Court. . . . The mother shall participate in supervised visits with the child. The mother shall continue to participate with parent-aide services. The mother shall obtain and maintain employment. The

---

[1] We use Ex. Tr. to refer to the Volume of Exhibits. The pages therein are unnumbered. Tr. refers to the Transcript of Evidence.

mother shall complete a parenting skills assessment and follow any and all recommendations of the assessment. The mother shall attend and participate in individual counseling to address issues of domestic violence, neglect and abuse, and any other areas that are deemed appropriate and necessary." Ex. Tr. (Exhibit J). With respect to Father, the trial court's order declared, "[t]he father waives his right to be represented by counsel. The father admits that the child is a child in need of services." Id. The trial court's order was entered April 12, 2007.

After a review hearing held on July 12, 2007, at which both Mother and Father appeared, the trial court entered an order finding among other things, "mother and child shall continue to participate in the case plan." Ex. Tr. (Exhibit K). No findings were entered with respect to Father. Father later testified that during the summer of 2007, he initially was allowed limited visitation with Child, however visitation was discontinued in September 2007, apparently because paternity had not yet been established. On February 12, 2008, DCS filed a petition to terminate both Mother's and Father's parental rights. In May 2008 Father sought paternity testing and filed a petition to establish paternity of Child which the trial court granted on September 30, 2008. From July 11, 2008 through January 29, 2009, Father was allowed supervised visitation with Child.

At a review hearing held November 25, 2008, at which Father appeared but Mother did not, the trial court entered several findings including, "Mother has not complied with the case plan. Father has complied with the case plan. [2] Mother has not enhanced her ability to fulfill parental obligations. Father has enhanced his ability to fulfill parental obligations. Mother does not visit regularly with the child. Father visits regularly with the child. Mother is not cooperating with the DCS. Father is cooperating with the DCS." Ex. Tr. (Exhibit R).

After a hearing conducted approximately three months later, on February 17, 2009, the trial court entered an order granting DCS' petitions to terminate the parental rights of Father with

---

[2] The record does not reveal that a case plan was ever entered with respect to Father. As discussed in further detail below there was apparently an informal adjustment whereby Father was provided a parent aide in conjunction with supervised visits with Child.

respect to I.A. and the parental rights of Mother regarding six of her seven children.[3]  The order involving I.A. provided in pertinent part:

> a.  The child has been removed from his parents for at least six (6) months under a dispositional decree of the Perry Circuit Court, dated April 12, 2007 . . . .
>
> b.  The child has been removed from his parents and has been under the supervision of a county Office of Family and Children for at least fifteen (15) of the last twenty-two (22) months.
>
> c.  There is a reasonable probability that:
>
> 1.  The conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied in that:
> i.  The Father, [J.H.], has not bonded with the child after six (6) months of Parent-Aid[e] services.
> ii.  The Father, [J.H.], needs lots of direction regarding simple tasks relating to the care of the child.
> iii.  Evidence presented from the Parent-Aid[e] caseworker that there has been no progress in the relationship between the father and the child in six (6) months of services.
> iv.  The Mother, [D.A.], has not visited the child since July, 2008.
> v.  The Mother, [D.A.], has continued, repeated drug use.
> vi.  The Mother, [D.A.], has demonstrated a lack of supervision of the children.
> vii.  The Mother, [D.A.], was terminated from the Perry County CHINS Drug Court.
> viii.  The Mother, [D.A.], left Stepping Stones Drug Recovery Program before completion of the program.
> ix.  The Mother, [D.A.], failed to cooperate with Parent-Aid[e].
> x.  The Mother, [D.A.], failed to cooperate with her Department of Child Services caseworker.
> xi.  The Mother, [D.A.], has failed to cooperate with any services offered to her by the Perry County Department of Child Services . . . .

---

[3] On motion of the DCS the trial court dismissed the Petition to Terminate Parental Rights with respect to Mother's oldest child, A.S., who was seventeen years of age at the time of the termination hearing and objected to being adopted.  Tr. at 7.

2. Continuation of the parent-child relationship poses a threat to the well-being of the child in that the mother, [D.A.], continues to abuse illegal substances, lacks supervision of the children and has not remedied any of the causes for removal in the underlying CHINS proceeding. The father, [J.H.], has not bonded with the child.

d. Termination is in the best interest of the child in that the child is in a stable environment. The child needs permanency.

Appellant's App. at 10-11. Father appealed, and in a memorandum decision the Court of Appeals affirmed. See J.H. v. Ind. Dep't of Child Servs., No. 62A01-0905-JV-252 (Ind. Ct. App. Dec. 10, 2009). Having previously granted transfer, we now reverse the judgment of the trial court.[4]

**Standard of Review**

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). We consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. Indiana Trial Rule 52(A). Here, the trial court entered findings of fact and conclusions thereon in granting DCS' petition to terminate Father's parental rights. When reviewing findings of fact and conclusions of law entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. Page v. Greene County Dep't of Welfare, 564 N.E.2d 956, 959 (Ind. Ct. App. 1991). We will set aside the trial court's judgment only if it is clearly erroneous. In re B.C., 441 N.E.2d 208, 211 (Ind. 1982). A judgment is "clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." In re R.J., 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

---

[4] Our determination in this regard applies to Father only. Mother did not contest the trial court's judgment and is not a party to this appeal.

5

Trial Rule 52(A) provides that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous." In implementing this directive, however, it is appropriate to take into consideration the express statutory requirement that "[a] finding in a proceeding to terminate parental rights must be based upon clear and convincing evidence." Ind. Code § 31-37-14-2. To construe harmoniously the requirements of the statute and Rule 52(A), we hold that to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment.

## Discussion

### I.

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. Meyer v. Neb., 262 U.S. 390, 399 (1923). A parent's interest in the care, custody, and control of his or her children is "perhaps the oldest of the fundamental liberty interests." Troxel v. Granville, 530 U.S. 57, 65 (2000). Indeed the parent-child relationship is "one of the most valued relationships in our culture." Neal v. DeKalb County Div. of Family & Children, 796 N.E.2d 280, 285 (Ind. 2003) (quoting Tillotson v. Clay County Dep't of Family & Children, 777 N.E.2d 741, 745 (Ind. Ct. App. 2002), trans. denied). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), trans. denied. Thus, "[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265.

Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate a parent-child relationship involving a child in need of services must allege that:

> (A) one (1) of the following exists:
> (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
> (ii) a court has entered a finding . . . that reasonable efforts for family preservation or reunification are not required, including

6

a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:
(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

DCS bears the burden of proving these allegations by clear and convincing evidence. Bester, 839 N.E.2d at 148.


**II.**


Father challenges the sufficiency of the evidence supporting the trial court's judgment with regard to Indiana Code sections 31-35-2-4(b)(2)(B) and (C). We first observe that section 31-35-2-4(b)(2)(B) is written in the disjunctive. Thus DCS was required to prove by clear and convincing evidence only one of the two requirements of subsection (B). See Bester, 839 N.E.2d at 148 n.5 ("Having found a reasonable probability that the conditions precipitating the [children's] removal would not be remedied, the trial court was not required to find also that the continuation of the parent-child relationship posed a threat to the [children], since the statute only requires finding one or the other.") (quoting In re W.B., 772 N.E.2d 522, 531 n.2 (Ind. Ct. App. 2002) (alteration in original)). In this case however the trial court found that both prongs of Indiana Code section 31-35-2-4(b)(2)(B) were satisfied. We therefore examine each in turn.

*A. Remediation of Condition*

In order to terminate the parent child relationship DCS must show by clear and convincing evidence that there is a reasonable probability that "the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied." Ind. Code § 31-35-2-4(b)(2)(B)(i). The record shows that I.A. was removed from the home of his parents[5] because of the lack of parental supervision: two of Mother's younger children were discovered by police playing in the parking lot of a motel unsupervised and two of Mother's older children had travelled to a nearby town alone. However at the time I.A. was removed, Mother and Father were not residing in the same household. Instead I.A. was living with Mother and in her sole custody and care. Thus the conditions that resulted in I.A.'s removal – lack of parental supervision – cannot be attributed to Father. "To hold [Father] liable for the conditions that resulted in [Child's] removal would be to hold [Father] liable for the actions of [Mother]." In re B.D.J., 728 N.E.2d. 195, 201 (Ind. Ct. App. 2000) (noting that conditions for removal from Mother's home could not be attributed to Father who was not residing with Mother at time children were removed). Therefore, the inquiry in this case is whether there is a reasonable probability that the reason for placement outside the home of the parents will not be remedied.

In order to determine whether the conditions which led to the placement of I.A. outside the home of Father are not likely to be remedied, the trial court must first determine what conditions led to DCS placing and then retaining I.A. in foster care rather than placing him with Father. See In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997) (noting that when the child is not in the custody of the parent, the focus of the termination inquiry is what conditions led to DCS retention of the custody of the child). Second, the trial court must determine whether there is a reasonable probability that those conditions will not be remedied. Id. In this case the trial court addressed the second requirement, but not the first. That is to say, although the trial court's

_____

[5] See Tipton v. Marion County Dep't. of Pub. Welfare, 629 N.E.2d 1262, 1266 (Ind. Ct. App. 1994) (holding that although the father did not have physical custody of his children at the time they were removed, the children were nonetheless effectively removed from both their parents when they were removed from the physical custody of the mother and placed in another home pursuant to the dispositional decree).

8

termination order sets forth why placement outside of Father's home will not be remedied, namely: Father had not bonded with I.A. after six (6) months of Parent-Aide services; Father needed considerable direction regarding simple tasks relating to I.A.'s care; and there had been no progress in the relationship between Father and I.A. despite six (6) months of services; the trial court's order does not indicate the conditions that led DCS to place I.A. in foster care or the reasons I.A. remained in foster care rather than being placed with Father. In essence, the factors identified by the trial court as conditions that will not be remedied are relevant only if those conditions were factors in DCS' decision to place I.A. in foster care in the first place. Not only is the trial court's order terminating Father's parental rights silent on this point, but also the record before us is silent. Instead, in the several review hearings conducted in this case the trial court's order simply reflects that I.A. was either placed in foster care or remained in foster care.[6]

Because there is nothing before us indicating the conditions that led DCS to place I.A. in foster care and to continue I.A.'s out-of-home placement rather than place him with Father, DCS has failed to demonstrate by clear and convincing evidence that there is a reasonable probability that the reasons for placement outside the home of the parents will not be remedied. See Ind. Code § 31-35-2-4(b)(2)(B)(i). Thus, the trial court's termination of Father's parental rights cannot be sustained on this ground.

B.     *Continuation of the Parent-Child Relationship*

As an alternative ground for terminating Father's parental rights the trial court determined that because Father had "not bonded" with I.A., the continuation of the parent-child

---

[6] See, e.g., Order on Review Hearing dated July 17, 2007, "Wardship shall continue and the above captioned child [I.A.] shall continue to be placed with [D.] and [D.G.], foster parents." Ex. Tr. (Exhibit K); Order on Review Hearing dated September 14, 2007, "The above captioned children, [J.A.], [K.A.], [I.A.], and [L.T.] shall remain in their current placement with [D.] and [D.G.], foster parents." Ex. Tr. (Exhibit M); Order on Permanency Hearing dated December 12, 2007, "Wardship shall continue and the child [I.A.] shall continue in the current placement of [D.] and [D.G.]." Ex. Tr. (Exhibit N); Order on Review Hearing dated January 31, 2008, "The above captioned child [I.A.] shall be removed from his present foster home and placed in the home of [M.] and [J.R.], foster parents." Ex. Tr. (Exhibit O); Order on Review Hearing dated June 2, 2008 "The above captioned child [I.A.] shall remain in current placement." Ex. Tr. (Exhibit P); Order on Periodic Case Review dated December 2, 2008, "The cause of the child's out-of-home placement has not been alleviated. . . . [W]ardship should continue and the present placement is appropriate," Ex. Tr. (Exhibit R).

relationship posed a threat to the child's well-being. See Ind. Code § 31-35-2-4(b)(2)(B)(ii). The record shows that although Father attended the initial CHINS hearing, as well as several review hearings, he did not seek genetic testing or file a petition to establish paternity until sometime in April 2008. After a June test result revealed that Father was the natural parent of I.A., DCS granted Father visitation with I.A. beginning July 11, 2008. Initially, the visits were conducted for an hour to an hour and a half, one day a week outside of Father's home. Tr. at 46. Thereafter the visits were increased to twice a week and were conducted at Father's residence. Id. at 46-47. All of the visits were supervised by a parent aide employed by the Lincoln Hills Development Corporation – a social services agency. And Father never cancelled or missed a single visit.

Leanne Halford was the parent aide[7] that supervised the visits between Father and I.A. With respect to the issue of bonding Halford testified:

> They were real uncomfortable with each other so that's been our main focus is try to get them to bond as a father and a child should. Still to this day at visits [Father] doesn't show excitement when [I.A.] arrives. It's just kind of take him in, get the coat off, go in, have a snack. [Father] still chooses not to have dinner with [I.A.]. Instead, it's me [and Father], sitting watching [I.A.] eat, which is kind of not the best circumstance for the child. I have encouraged [Father] to eat with him just because that's a bonding issue as well and interacting at the dinner table.

Tr. at 66-67. Halford continued stating:

> [I.A.], still after all this time doesn't refer to [Father] as daddy. It's just I feel like the child, he just knows he goes there, visits for a couple hours, two times a week. He leaves, and then there's no – like I said, when we arrive there's no hugging or kissing. There's no [']I miss you, what have you been doing.['] None of that goes on . . . .

Tr. at 72.

---

[7] Halford testified that the parent aide responsibilities included offering "services with parenting, child development, safety, housekeeping, any other concern clients may have. If they need further education we help them with that. We reach out to the community. Do anything that – personal issues they are having, we address those with them and help them the best that we can, or we refer them on to other services if we cannot help them personally." Tr. at 63

10

We first observe that by concluding Father had not bonded with I.A., the trial court and DCS apparently are referring to what they perceive as insufficient emotional attachment and interaction between Father and Child. The record certainly demonstrates that Father's parenting skills are lacking. But a case plan for reunification was never developed for Father indicating what was expected of him. And thus, other than parent aide, no services were provided to assist Father in developing effective parenting skills. It is of course true that "the provision of family services is not a requisite element of our parental rights termination statute." In re E.E., 736 N.E.2d 791, 796 (Ind. Ct. App. 2000). But there is nothing in this record demonstrating that the exercise of visitation twice a week for an hour and a half over a six month period with a two-year-old child is sufficient time under the circumstances to establish a bond. Second, and more importantly, other than answering "[y]es, I do" to the general question "Do you believe that continuation of the parent-child relationship poses a threat to the wellbeing of these children," Tr. at 49, the DCS case manager testifying on the matter does not explain why this is so with respect to Father and I.A. By contrast we see little harm in extending the CHINS wardship until such time as Father has a chance to prove himself a fit parent for his child.

In sum, DCS has failed to prove by clear and convincing evidence that there is a reasonable probability that by continuing the parent-child relationship, the emotional or physical well-being of I.A. is thereby threatened. See Egly v. Blackford County Dep't of Pub. Welfare, 592 N.E.2d 1232, 1233, 1234 (Ind. 1992) (noting that clear and convincing evidence need not reveal that "the continued custody of the parents is wholly inadequate for the child's very survival," rather, it is sufficient to show that "the child's emotional and physical development are threatened" by the respondent parent's custody). The involuntary termination of parental rights is the most extreme sanction a court can impose on a parent because termination severs all rights of a parent to his or her children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied. Therefore, termination is intended as a last resort, available only when all other reasonable efforts have failed. Id. We are not convinced that all other reasonable efforts have been employed in this case to unite this father and son.

11

## Conclusion

DCS has not proven by clear and convincing evidence that there is a reasonable probability that the reasons for Child's placement outside of Father's home will not be remedied or that the continuation of the parent-child relationship between Father and Child poses a threat to the well-being of the child.[8]  We therefore reverse the judgment of the trial court terminating Father's parental rights.

Shepard, C.J., and Dickson and Sullivan, JJ., concur.
Boehm, J., dissents with separate opinion.

---

[8] Having made this determination we need not address Father's additional contention that DCS failed to prove that termination of his parental rights is in the child's best interests.  See Moore v. Jasper County Dep't. of Child Servs., 894 N.E.2d 218, 229 n.7 (Ind. Ct. App. 2008) (declaring that Department of Child Services must prove each element of I.C. § 31-35-2-4(b) by clear and convincing evidence in order to terminate a parent-child relationship).

**Boehm, Justice, dissenting.**

I respectfully dissent. I recognize that termination of parental rights presents an intrusion by the courts into constitutionally protected interests of the parent. And protection of constitutional rights may require enhanced appellate scrutiny. See Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 498–504 (1984). The role of the appellate courts, however, is somewhat different in some termination cases than it is in determining whether the record supports a finding of actual malice in a defamation case. The ultimate issues in this case are the likelihood that the conditions leading to the child's removal will not be remedied, and whether continuation of the parental relationship poses a threat to the child. In my view, neither of these is susceptible to the rigorous analysis we seek to apply in determining whether more precise statutory elements are met, or whether the evidence is sufficient to establish a historical fact such as whether the traffic light was red or green.

The statute calls for both of these determinations critical to a termination proceeding in language that appears in the same form as language setting out the elements of a crime or tort. But the determinations the trial court is called upon to make in a termination proceeding turn on questions such as the degree of confidence we have that the parent will in fact maintain a decent home for the child and the reliability of assurances that a straighter path has been found. These determinations call on the trial court to make not only an evaluation of credibility of witnesses, but also an evaluation of the reliability of their assurances as to various assertions and promises. Resolution of these questions often is more in the nature of predictions of future events, not findings as to what has already occurred. As such, an accurate and detailed rationale for a termination is more difficult to write with precision and frequently, as in this case, ultimately turns significantly on what the gut of the finder of fact is telling him or her. Such a finding is not as readily reviewed by an appellate court because it cannot easily be picked apart into its components, and is therefore less susceptible to the analysis an appellate court usually undertakes. Factual determinations are reviewed under the deferential "clearly erroneous" standard. The standard of review in termination cases, however, is all over the map. See James W. Paulsen, Family Law: Parent and Child, 51 S.M.U. L. Rev. 1087, 1124–26 & ns.282–86 (1998) (noting the wide range of the standard of review by appellate courts in various jurisdictions, from de novo to abuse of discretion). Because of the unusual nature of termination

determinations, I would give even wider deference to the trial judge's conclusion as to what is in the best interests of the child, and whether the conditions are likely to improve.

Of course, some challenges to terminations are based on failure to comply with procedural requirements. These are readily reviewed as any other procedural error. But when, as here, the issue is the sufficiency of the trial court's findings as to the ultimate substantive requirements for a termination my lack of confidence in appellate review leads me to defer to the trial court in all but the obvious miscarriage.

On this record, I believe the trial court could have concluded that although the father never directly contributed to the reasons for placing the child in foster, he lacked the ability to provide proper parenting and care for the child both immediately and in the future. As we recently reiterated, in ruling on a termination petition, the parents' interests must be subordinated to the child's. In re G.Y., 904 N.E.2d 1257, 1259 (Ind. 2009).

In sum, I would not disrupt this child's current placement based on failure of the trial court to articulate its reasoning in sufficient detail. In recent years, for good reason, we and most states have taken legislative and administrative steps to avoid prolonged and repeated disruptions in a child's placement. This also favors leaving in place an order that may be on the edge of acceptability but where future review is unlikely to result in a different outcome. I would accept as sufficient the trial court's ultimate findings that continuation of the parental relationship presents a threat to the child's well-being and there is a reasonable probability that the conditions leading to placement outside the home will not be remedied.