## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Mar 05 2015, 10:11 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

---

**ATTORNEY FOR APPELLANT**

Cory A. Spreen
Fort Wayne, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

In the Matter of the Termination of the Parent-Child Relationship of,

A.R.B., & A.K.B. (Children),

and,

J.B. (Father),

*Appellant-Respondent,*

v.

March 5, 2015

Court of Appeals Cause No.
02A04-1407-JT-348

Appeal from the Allen Superior Court
Cause No. 02D08-1403-JT-19, 02D08-1403-JT-20

The Honorable Charles F. Pratt, Judge; The Honorable Thomas P. Boyer, Magistrate

The Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Barnes, Judge.**

## Case Summary

J.B. ("Father") appeals the termination of his parent-child relationship with A.R.B. and A.K.B. We affirm.

## Issue

Father raises one issue, which we restate as whether there is sufficient evidence to support the termination of his parental rights.

## Facts

A.R.B. was born in 2009, and A.K.B. was born in 2012. When A.K.B. was born, Father was married to the children's mother, S.B. ("Mother"). In August 2012, Mother and Father were arrested for several drug-related offenses alleged to have occurred in the home they shared with the children, and the children were removed from the home by the Department of Child Services ("DCS"). The children were determined to be children in need of services and, on March 7, 2014, DCS filed a petition to terminate Mother's and Father's parental rights. On March 13, 2014, Mother voluntarily consented to the termination of her parental rights.

[4] Father had no contact with the children after he was arrested, and he remained incarcerated while the criminal charges were pending. In February 2013, Father was convicted of Class B felony dealing in methamphetamine and Class C felony neglect of a dependent after pleading guilty, and several charges were dismissed.

[5] A termination hearing was held in May 2014 and, following the hearing, the trial court issued an order terminating Father's parental rights. The trial court reasoned in part:

> The Court finds by clear and convincing evidence that there is a reasonable probability that the conditions resulting in [the children's] removal from [Father] will not be remedied. [Father] has two (2) separate felony convictions for drug offenses. [Father] lost 180 days of good time credit towards his sentence during his current incarceration with the Indiana Department of Corrections. At the time of the Fact Finding Hearing on May 29, 2014, [Father's] anticipated release date from the Indiana Department of Corrections was July 2, 2015,[1] and he had not completed any programs that provide for a reduction in his executed sentence. After his release from the Plainfield Correction Facility [Father] will still be subject to serving 3 years of his sentence in Allen County Community Corrections and 4 years of active adult probation. No Contact Orders entered in Allen Superior Court . . . prohibit contact between [Father] and [the children] until his probation is completed. There is no evidence that [Father] has completed any programs specifically designed to address substance abuse since his arrest on August 28, 2012. [Father] has provided no financial support or clothing for [the children] since his arrest on August 28, 2012.

---

[1] The trial court's order contains two different anticipated release dates—July 2, 2015 and November 12, 2015. Testimony at the termination hearing, including Father's testimony, indicated an anticipated release date of November 2015.

> [Father] has not completed his GED and has no housing plans after his release from the Plainfield Correctional Facility.

App. p. 33. Father now appeals.

## Analysis

Father argues that there is insufficient evidence to support the termination of his parental rights. "When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." *Id.* (quoting Indiana Trial Rule 52(A)). Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. *Id.* "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." *Id.* We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

A petition to terminate a parent-child relationship must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the

date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. *I.A.*, 934 N.E.2d at 1133.

[8] Father claims there is insufficient evidence that the conditions resulting in the children's removal from the home will not be remedied. In making this determination, the trial court judges a parent's fitness at the time of the termination proceeding, balancing a parent's recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). This balancing is entrusted to the trial court. *Id.* "Requiring trial courts

to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[9] Father acknowledges that he has a previous drug-related conviction in addition to his most recent methamphetamine-related conviction, which led to the children's removal, and that he has not completed any substance abuse programs since his August 2012 arrest. He claims that the trial court failed to consider evidence that he has not used drugs since his arrest. It is clear, however, that the weight given to Father's sobriety while incarcerated was a matter within the trial court's discretion. *See K.T.K. v. Indiana Dep't of Child Servs., Dearborn Cnty. Office*, 989 N.E.2d 1225, 1234 (Ind. 2013) (concluding that it was within the trial court's discretion to consider mother's sobriety in prison "where she would have not had access to any illegal substances, nor be subjected to the type of stressors—namely the responsibility of maintaining a household and raising three young and active children—that would normally trigger a desire to pursue an escape from the pressures of everyday life that drugs often provide").

[10] Father also takes issue with the trial court's assessment of his educational credit time. Father contends that some of his good time credit, which had previously been taken away when Father was found guilty of a possessing a cellphone in jail, had already been restored. Be that as it may, the trial court's finding related to the completion of "programs that provide for a reduction in his executed sentence[,]" not the restoration of good time credit. App. p. 33. Although Father completed other programs while incarcerated, was working

toward completing a literacy program, and intended to get his GED, he had not in fact completed any programs that resulted in the award of educational credit time. The evidence supports this finding.

[11] As for Father's housing plans upon release, Father contends the trial court's finding that he had no housing plans was not supported by the evidence. At the hearing, Father's correctional case worker testified that, upon his release, Father "does not having housing. He will be going to a shelter." Tr. p. 10. This is consistent with Father's testimony that he will be residing at a mission if he has no place else to go and that he hasn't "really tried to find a place to go yet." *Id.* at 36. This evidence supports the trial court's finding that Father has no housing plans upon his release.

[12] Father has not established that the evidence does not support the findings or that the findings do not support the conclusion that the conditions resulting in removal would not be remedied. There is sufficient evidence to support the termination of Father's parental rights.

## Conclusion

[13] The evidence supports the conclusion that the conditions resulting in the children's removal would not be remedied. We affirm.

[14] Affirmed.

May, J., and Pyle, J., concur.