## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 06 2017, 8:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Worthley
Worthley Law LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

E.L., (minor child),

and

S.L. (father),

*Appellant-Respondent,*

*v.*

The Indiana Department of Child Services,

*Appellee-Petitioner.*

July 6, 2017

Court of Appeals Case No. 64A04-1702-JT-360

Appeal from the Porter Circuit Court

The Honorable Mary R. Harper, Judge

The Honorable Gwenn R. Rinkenberger, Magistrate

Trial Court Cause No. 64C01-1605-JT-461

**Bradford, Judge.**

# Case Summary

Appellant-Respondent S.L. ("Father") and his wife M.L. ("Mother") are the biological parents of E.L., born in December of 2012. In January of 2015, Mother was murdered and Father immediately became a person of interest. Appellee-Petitioner the Indiana Department of Child Services ("DCS") removed E.L. from Father's care and petitioned to have her declared a child in need of services ("CHINS"). In March of 2016, Father was convicted of Mother's murder and was later sentenced to fifty-five years of incarceration. In June of 2016, DCS filed a petition to terminate Father's parental rights in E.L. ("TPR Petition"). In January of 2017, the juvenile court granted DCS's TPR Petition. Father contends that DCS presented insufficient evidence to establish that the conditions leading to the removal of E.L. would not be remedied and that Father's continued parental relationship posed a threat to E.L.'s well-being. Because we conclude that the juvenile court did not err in finding that Father was unlikely to remedy the conditions that led to E.L.'s removal, we affirm.

# Facts and Procedural History

E.L. was born to Father and Mother on December 7, 2012. On January 16, 2015, DCS filed a CHINS petition alleging that Mother had been murdered in the family home, Father was a person of interest in the murder, and E.L. was in the home at the time. E.L. was placed with paternal relatives. On February 12, 2015, Father was incarcerated for Mother's murder. DCS offered no services to Father aimed at reunification following his incarceration. On April 14, 2015,

the juvenile court adjudicated E.L. to be a CHINS after Father admitted to the allegations in the CHINS petition.

[2] On May 29, 2015, the juvenile court approved E.L.'s placement with her maternal grandparents in Illinois but maintained reunification as the permanency plan. On March 11, 2016, a jury found Father guilty of murdering Mother, and the criminal court sentenced him the next month to fifty-five years of incarceration. On April 26, 2016, the juvenile court held a review hearing, after which found that reasonable efforts to reunify Father and E.L. were no longer required due to Father's criminal conviction and approved adoption as the permanency plan.[1]

[3] On or about June 7, 2016, DCS filed its TPR Petition. On January 19, 2017, following a hearing, the juvenile court issued its order terminating Father's parental rights in E.L. The termination order provides, in part, as follows:

> 5.     The conditions that resulted in the child's removal have not been remedied, and are unlikely to be remedied. Father remains incarcerated following his conviction for the murder of the child's Mother. He is currently sentenced to 55 years in the Indiana Department of Correction with none suspended. Father asserts that he is appealing his conviction; however, he did not in this hearing present any evidence of an appeal or Notice of Appeal that has been filed since his conviction. Nevertheless, even if we were to assume that Father has appealed his conviction for murder, the process of an appeal takes years and

---

[1] *See* Ind. Code § 31-34-21-5.6(b)(2)(A) (reasonable effort to reunify not required if court finds that a parent of a child who is a CHINS has been convicted of the murder of the other parent of the child).

there is no guarantee that even following that lengthy process that the Father's conviction would be overturned. Father offers nothing but his hope that his conviction may someday be overturned. The Court of Appeals in *In re H.L.*, 915 NE. 2d 145 (Ind. Ct. App. 2009) upheld the termination of the Father's parental rights, when the Father presented no evidence that he had plans for suitable housing, employment or even a release date. *In re H.L.*, 915 N.E. 2d 145 (Ind. Ct. App. 2009)[.] The Court further held that any absence of services was due to father's incarceration and he does not point to any evidence that he specifically requested services. *Id*. See also *Castro v Office of Family and Children*, 842 N.E. 2d 36 7,3 7 7 (Ind. Ct. App. 2006) *trans. denied*.

6. The continuation of the parent-child relationship poses a threat to the well-being of the child. Father was found, beyond a reasonable doubt, to have murdered the child's Mother. Indiana legislators have addressed the issue as to whether a parent that murders the other parent of a child loses their parental rights. Both CHINS and Adoption laws have addressed the issue. I.C. 31-34-21-5.6(b)(2) authorizes the CHINS court to enter an order that DCS is not required to make reasonable efforts to provide services in an effort to reunite the child with a parent when a parent of a Child in Need of Services has been convicted of the murder or voluntary manslaughter of the child's other parent. The law provides that upon granting the Motion to Waive Reasonable Efforts, the Court may proceed with the implementation of the Permanency Plan of Adoption. The Adoption statutes also recognize that when a parent of a child murders their other parent; the court can dispense with the consent of the parent. I.C. 31-19-19-9. Indiana law is clear in the recognition that once a parent is convicted (not merely charged) of the murder of the other parent, they lose their right to parent the child.

Appellant's App. Vol. II pp. 41-42. Father contends that DCS presented

insufficient evidence to establish that the conditions leading to the removal of

E.L. would not be remedied and that Father's continued parental relationship posed a threat to E.L.'s well-being.

## Discussion and Decision

[4] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to E.L.'s interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

[5] The purpose of terminating parental rights is not to punish the parent but to protect E.L. *Id.* Termination of parental rights is proper where E.L.'s emotional and physical development is threatened. *Id.* The juvenile court need not wait until E.L. is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

[6] In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Invol. Term. of Parental*

*Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[7] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

[8] In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

# I. Reasonable Probability that the Conditions Resulting in Removal Would Not be Remedied

[9] Father contends that the record does not establish that the reasons for E.L.'s removal would not be remedied.

> In determining whether "the conditions that resulted in the child's removal … will not be remedied," [Ind. Code § 31-35-2-4(b)(2)], we "engage in a two-step analysis," [*K.T.K. v. Ind. Dep't of Child Servs., Dearborn Cnty. Office*, 989 N.E.2d 1225, 1231 (Ind. Ct. App. 2013)]. First, we identify the conditions that led to

removal; and second, we "determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quoting [*In re I.A.*, 934 N.E.2d 1127, 1134 (Ind. 2010)]) (internal quotation marks omitted). In the second step, the trial court must judge a parent's fitness "as of the time of the termination proceeding, taking into consideration evidence of changed conditions," *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 152 (Ind. 2005)—balancing a parent's recent improvements against "habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation." *K.T.K.*, 989 N.E.2d at 1231 (quoting *Bester*, 839 N.E.2d at 152) (internal quotation marks omitted). We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *See K.T.K.*, at 1234. Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior.

*In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014) (footnote omitted).

[10] Here, the condition that led to E.L.'s removal from Father's care was Mother's murder and the suspicion that Father was responsible, while the removal continues due to Father's subsequent conviction for that murder and his incarceration. The question, then, is whether the juvenile court erred in concluding that Father was unlikely to remedy those conditions. We conclude that it did not.

[11] Father's entire argument is that he has yet to exhaust the appellate challenges to his conviction for Mother's murder and, as such, the termination of his parental rights to E.L. is premature. Standing alone, this fact falls far short of establishing a reasonable probability that Father's incarceration will end any

time soon. Father points to nothing in this record (or to anything else, for that matter) to even hint at a decent chance of victory on appeal, much less a victory that would result in immediate release from incarceration. To put it simply, we agree with the juvenile court's assessment that Father offers nothing more than hope that his conviction may be overturned at some point, which is far from sufficient to establish that the juvenile court's conclusion in this regard is clearly erroneous.

## II. Parent-Child Relationship Posed a Threat to E.L.

[12] Father also contends that the juvenile court erred in concluding that the continued parent-child relationship posed a threat to E.L. Indiana Code section 31-35-2-4(b)(2)(B), however, is written in the disjunctive, meaning that DCS must establish only that *one* of the following is true: "[t]here is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied[, t]here is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[, *or* t]he child has, on two (2) separate occasions, been adjudicated a child in need of services[.]" Because we have already concluded that the juvenile court did not err in concluding that the conditions that led to E.L.'s removal would not likely be remedied, we need not address Father's argument in this regard.

[13] The judgment of the juvenile court is affirmed.

Najam, J., and Riley, J., concur.