## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 19 2016, 8:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of AB and AB, Minor Children, and their Father JB,

JB,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

October 19, 2016

Court of Appeals Case No.
54A01-1605-JT-1145

Appeal from the Montgomery Circuit Court

The Honorable Harry A. Siamas

Trial Court Cause No.
54C01-1601-JT-2
54C01-1601-JT-3

**Bailey, Judge.**

# Case Summary

[1] J.B. ("Father") appeals the termination of his parental rights upon the petition of the Indiana Department of Child Services ("DCS"). J.B. raises the sole restated issue of whether there was sufficient evidence to terminate his parental rights. We affirm.

# Facts and Procedural History

[2] Father and P.O. ("Mother")[1] had two daughters: Av.B., born on August 21, 2009, and Ar.B., born on August 1, 2013 (collectively, "Children"). On July 31, 2014, DCS responded to a report that Father and Mother were using controlled substances while in caregiving roles to Children. DCS accompanied police to the residence of Mother's mother, which is where Children were living at the time. The police searched the residence and found drug paraphernalia under the mattress in the bedroom Mother used. Mother denied that the paraphernalia belonged to her but admitted to using heroin two or three months prior. The police arrested Mother. Later, DCS spoke with Father. Father also admitted to using heroin two or three months prior, but claimed he no longer

---

[1] Only Father's appeal is before us.

used heroin. Father told DCS that he was staying with friends because of an argument with Mother.

[3] DCS observed that Children were unclean. Av.B.'s hair was matted and she had a mark on her arm that appeared to be a cigarette burn or a bite. She also had dried feces on her back and fingernail polish on her clothes. Ar.B.'s diaper was wet. Because Mother was jailed and Father was homeless, DCS took Children into custody and placed them with S.M., who is Children's paternal grandmother ("Grandmother").

[4] On August 4, 2014, DCS filed verified petitions alleging that Children were Children in Need of Services ("CHINS"). Following a fact-finding hearing, on October 7, 2014 Children were adjudicated CHINS. On November 5, 2014, the court entered a dispositional decree ordering Father and Mother to participate in services. Among the ordered services, Father was to engage in drug and alcohol assessment and follow recommendations. Children were to remain in Grandmother's care. As of January 1, 2015, the case plan was reunification with Father and Mother.

[5] Throughout the underlying CHINS case, Father was arrested and incarcerated several times on charges that involved possession of cocaine, possession of marijuana, drug paraphernalia, and violating his probation by testing positive for heroin. Moreover, Father had positive drug screens in January, February, October, and November of 2015. Father twice started an intensive outpatient treatment program ("IOP") in 2015, but failed to complete IOP both times. In

February 2015, Mother and Father were staying at a friend's house where police found an active methamphetamine lab.

[6] At a July 6, 2015 permanency hearing, the trial court ordered a concurrent permanency plan of reunification and adoption. Then, on January 6, 2016, the trial court changed the permanency plan to guardianship or adoption. On that day, DCS petitioned to terminate the parental rights of Father and Mother as to Children. The trial court conducted an evidentiary hearing on March 31, 2016, and the hearing was concluded on May 16, 2016. The next day, the trial court entered its findings of fact, conclusions of law, and order terminating Father's parental rights.

[7] This appeal ensued.

# Standard of Review

[8] When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of witnesses. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016) (citing *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010)). Moreover, where the trial court has entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *In re I.A.*, 934 N.E.2d at 1132. "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." *Id.* These findings must be based on clear and convincing evidence. Ind. Code § 31-37-14-2. Thus, we review the trial court's judgment to determine whether the evidence clearly and

convincingly supports the findings and the findings clearly and convincingly support the judgment. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229-30 (Ind. 2013).

[9] Our supreme court and the United States Supreme Court have reiterated that "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Indeed, although parental interests are not absolute, "the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id*. at 147. Accordingly, the Indiana statute governing the termination of parental rights sets a high bar for severing the parent-child relationship. *See* I.C. § 31-35-2-4(b).

[10] Under Indiana Code Section 31-35-2-4(b)(2), a petition seeking to terminate the parent-child relationship must allege, in pertinent part:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> \* \* \* \*
>
> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

* * * *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove each element by clear and convincing evidence. *In re I.A.* 934 N.E.2d at 1133 (citing *Bester*, 839 N.E.2d at 148).

# Discussion and Decision

Father challenges whether the evidence is sufficient to terminate his parental rights. He focuses on whether termination was in the best interests of Children.

In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id*. The trial court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, the testimony of service providers may support a finding that termination is in the child's best interests. *Id*.

[13] Here, the evidence favorable to the trial court's decision indicated that during the pendency of the CHINS matter, Father repeatedly engaged in drug-related criminal activity. When Father was not incarcerated, he continued to use controlled substances, and twice failed to complete IOP. Moreover, Father lacked a stable residence. As to Children, they had been placed with Grandmother for nearly two years and, during that time, had achieved a routine and stability. At the time DCS removed Av.B., she was somewhat delayed in her development, but had since caught up. Children were bonded to Grandmother and thriving in her care. Moreover, case manager Kelly Mobley testified that adoption by Grandmother would be in Children's best interests.

[14] Father points to evidence which he asserts is favorable to him. Among Father's contentions are that he was willing to start services and undergo IOP, and that he loved his children and wanted to visit them. Further, at the final fact-finding hearing, Father testified to being set to start a job the next day.

[15] To the extent Father's argument is an invitation to reweigh the evidence or judge witness credibility, we must decline. *See In re I.A.*, 934 N.E.2d at 1132. Moreover, the trial court "has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *In re. E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). Here, there was ample evidence of Father's substance abuse, leading to multiple periods of incarceration when Father could not care for Children. Father failed to complete services aimed to rectify his substance-abuse problem, and was unable to establish a stable residence over the course of nearly two years. The case manager testified that adoption was in

Children's best interests. Accordingly, we conclude that there was sufficient evidence to support terminating Father's parental rights.

# Conclusion

Clear and convincing evidence supported the trial court's judgment terminating Father's parental rights.

Affirmed.

Riley, J., and Barnes, J., concur.