## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 30 2020, 9:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:
CHILD ADVOCATES, INC.

DeDe Connor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of M.K., (Minor Child), Child in Need of Services,

and

V.K. (Father),

*Appellant-Respondent,*

March 30, 2020

Court of Appeals Case No.
19A-JC-2355

Appeal from the Marion Superior Court

The Honorable Diana Burleson, Magistrate

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner,*

and

Child Advocates, Inc.,

*Guardian ad Litem.*

Trial Court Cause No.
49D15-1905-JC-1260

**Tavitas, Judge.**

## Case Summary

[1] V.K. ("Father") appeals the trial court's order adjudicating his minor child, M.K. (the "Child"), as a child in need of services ("CHINS"). We affirm.

## Issue

[2] Father raises one issue on appeal, which we restate as whether the evidence was sufficient to support the trial court's conclusion that the Child is a CHINS.

## Facts

[3] The Child was born in 2002 to V.J. ("Mother"), who died in 2018, and Father. The Child lived at Father's home with Father's wife ("Stepmother"), the Child's sister, and three step-siblings.

[4] On May 2, 2019, the Department of Child Services ("DCS") received a report the Child did not return home from school, and Father told DCS that the Child

was no longer welcome at his home. The same day, Father agreed to a safety plan for the Child, and the Child was sent to a Stop Over home[1] from May 3, 2019, to May 13, 2019.[2] On May 13, 2019, Father reluctantly allowed the Child to return home because the Child had nowhere else to go; however, the Child said she would commit suicide if she had to return to Father's home.

[5] On May 13, 2019, DCS removed the Child from Father's home because the Child's "physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the [C]hild with necessary food, clothing, shelter, medical care, education or supervision." Appellant's App. Vol. II p. 24. Shortly thereafter, Deja Thomas, an assessment family case manager ("FCM") with DCS, conducted an assessment with the Child and Father. Father stated to FCM Thomas that: (1) he did not want the Child to return home until she received services outside of the home and he denied he needed services; and (2) Father reported the Child was acting out sexually and she did not want to follow the rules at home.

[6] On May 15, 2019, DCS filed a petition alleging the Child was a CHINS pursuant to Indiana Code Section 31-34-1-1. Specifically, DCS alleged: (1) Father has failed to provide the child with a safe and stable home; (2) the Child

---

[1] Stop Over is not defined in the record; however, the Child described Stop Over as a "shelter" for "teens and young adults." Tr. Vol. II p. 20.

[2] It appears that Father also attempted to get the Child in a Stop Over home previously.

has a history of running away and has not been provided adequate supervision by Father; (3) the Child has threatened to commit suicide if she is to return home to Father; (4) Father was unwilling to meet the Child's needs as Father was not allowing the Child to return home; and (5) Father has not created an appropriate, alternative plan for the Child's care.

[7] Tracy Johnson, an outpatient therapist at Park Center, conducted an assessment on the Child on July 22, 2019. Johnson diagnosed the Child with post-traumatic stress disorder, moderate cannabis abuse disorder, and unspecified depression. At the time of the July 22 assessment, the Child was already seeing a therapist, Katherine Devinney.[3]

[8] The trial court held a CHINS fact finding hearing on September 10, 2019. At the time of the fact finding hearing, the Child was in foster care. Witnesses testified to the foregoing events. FCM Thomas testified about her concerns for the Child, and specifically, that Child did not feel safe in the home and the Child reported physical abuse in the home. Devinney testified that, based on disclosures the Child made to Devinney during therapy, she had concerns regarding returning the Child to Father. The only services Devinney recommended for the Child was continued therapy with Devinney.

---

[3] Katherine Devinney, a therapist at Lifeline Youth and Family Services in Fort Wayne, has been the Child's therapist since early July 2019 pursuant to a DCS referral.

[9] The Child testified at the fact finding hearing as follows: (1) her relationship with Father is "non[]existent" and the Child does not want anything to do with Father, tr. vol. II p. 23; (2) the Child does not get along with her other family members; (3) the Child has tried to harm herself as a result of those poor relationships; (4) the Child and Father previously smoked marijuana daily; (5) the Child does not feel safe returning home; and (6) the Child was willing to continue working with her therapist and other service providers.

[10] Elizabeth Davids, a permanency FCM with DCS, testified as follows: (1) Father stated that he has done all he can do to help the Child; (2) Father believes the Child is the issue; (3) Father is concerned with the way the Child "uses her body," and the fact that the Child's former boyfriend vandalized Father's vehicle, tr. vol. II p. 36; (4) Father does not believe that he needs any services and believes there are no issues with regard to his parenting of the Child; and (5) Father does not want the Child to return home until she receives help with her issues. Father was not able to give FCM Davids specific information about what Father has done in the past to assist the Child.

[11] FCM Davids did not recommend the Child be placed with Father because the Child is a runaway risk; the Child's underlying needs would not be addressed; and Father does not have the willingness to learn about the Child's needs. FCM Davids did not believe Father would even allow the Child back into the home. FCM Davids recommended several services "to help build and repair the relationship between the family and dad and daughter," including a parent family functional assessment and family therapy. *Id.* at 38.

[12] At the close of the fact finding hearing, the trial court adjudicated the Child a CHINS. The trial court proceeded immediately to disposition. The trial court ordered Father to participate in the parental participation order, which the trial court incorporated into its dispositional decree. *See* Appellant's App. Vol. II p. 17. The parental participation order ordered Father to participate in a parenting family functioning assessment, follow the recommendations from that assessment, and participate in family therapy after a positive recommendation from the Child's therapist. Father now appeals.

## Analysis

[13] Father argues the evidence is insufficient to conclude that the Child is a CHINS. CHINS proceedings are civil actions; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *N.L. v. Ind. Dep't of Child Servs* (*In re N.E.*), 919 N.E.2d 102, 106 (Ind. 2010). On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Here, the trial court entered findings of fact and conclusions thereon in granting DCS's CHINS petitions. When reviewing findings of fact and conclusions thereon, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *In re I.A.,* 934 N.E.2d 1127, 1132 (Ind. 2010). We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[14]     Indiana Code Section 31-34-1-1 provides that:

> . . . [A] child is a child in need of services if, before the child becomes eighteen years of age:
>
> > (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
> >
> > (2) the child needs care, treatment, or rehabilitation that:
> >
> > > (A) the child is not receiving; and
> > >
> > > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[15]     "[T]he purpose of a CHINS adjudication is to protect children, not [to] punish parents." *In re N.E.*, 919 N.E.2d at 106. A CHINS adjudication is not a determination of parental fault but rather is a determination that a child is in need of services and is unlikely to receive those services without intervention of the court. *Id.* at 105. "A CHINS adjudication focuses on the condition of the child . . . . [T]he acts or omissions of one parent can cause a condition that creates the need for court intervention." *Id.* (citations omitted).

[16]     Father argues that DCS failed to prove that the Child is a CHINS because: (1) the only services the Child needs are therapy that the Child is already receiving and wanted to continue; (2) coercive intervention of the trial court was not

necessary to get the Child the assistance she needed; and (3) Father did not need any specific services. We disagree.

[17] While the Child has accepted that she will continue her therapy and other services, Father said multiple times that he did not need services and that there are no issues with his parenting. Father told DCS the problem is with the Child, and not with Father. Father has failed to secure an alternative to the trial court's intervention. The Child is without a home and the State is required to intervene. Assisting the Child is not a one-way street, and the fact the Child is willing to engage in services does not mean coercive intervention is not necessary. Father does not understand the Child cannot do this alone and is not willing to help the Child. The trial court ordered Father to participate in a parenting assessment, follow the recommendations from the assessment, and participate in family therapy when the Child's therapist determined the Child was ready.[4]

[18] Father cites *In re V.H.,* 967 N.E.2d 1066 (Ind. Ct. App. 2012), as a "similar situation" where the mother refused to pick up her child from Lutherwood because she wanted the Child to receive additional services. Appellant's App. Vol. II p. 12. The Mother in *J.H.,* however, was taking action even after DCS became involved, such as contacting her physician and scheduling a

---

[4] The trial court's conclusion does not support Father's contention that the court "did not find the Father needed any particular services." Appellant's Br. p. 6. At the very least, Father's participation in therapy with the Child when she was ready constituted a service by Court intervention.

psychological evaluation for her child after learning it would take a significant amount of time for DCS to obtain one. In this case, FCM Davids testified Father could not share what has been done to assist the Child other than not allowing the Child to return to the home.

[19] Father has been clear that he will not participate in services to help the Child absent court intervention. *See cf. In re D.J.,* 68 N.E.3d 574, 581 (Ind. 2017) (finding coercive intervention of the court was not needed when parents completed the parenting curriculum, parents were engaged in services, and "serious" about doing what DCS asked parents to do). The trial court's conclusion is not clearly erroneous.

## Conclusion

[20] The evidence was sufficient to adjudicate the Child a CHINS. We affirm.

[21] Affirmed.

Najam, J., and Vaidik, J., concur.